UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THOMAS ALFORD,

          Plaintiff,

-against-

TURBINE AIRFOIL COATING AND REPAIR, LLC,

          Defendant.

**Docket No.: 12CV7539 (DLC)(LMS)**

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

---

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York and Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Thomas Alford (Plaintiff or "Alford"), through his undersigned attorneys, submits the following statement of material facts, and opposition to Defendants statement of material facts, as to which there are triable issues in opposition to Defendants' Motion for Summary Judgment.

1. Admit.

2. Admit. Notwithstanding, Ben Groff was fired in disgrace for fraudulent practices and misrepresentation. (Wilson transcript pgs. 76,24-81,6).

3. Admit. Notwithstanding, Sherri Broadwell was responsible for employee training; maintaining Material Data Sheets (MDS); Worker Compensation and Disability claim paperwork. She was further responsible for all air monitoring, testing in the facility or what was necessary to follow or required by OSHA. (Broadwell transcript pgs. 7, 6 – 8, 3) She walked the floors daily throughout the plant. (Broadwell transcript pgs. 14, 1-8) she did not receive any training in ADA,

reasonable accommodation or the interactive process (Broadwell transcript pgs. 54, 1-24)

4. Admit. Notwithstanding, co-located at the Defendant's premises was ACT, Defendant's "sister" company which performed the same functions as Defendant, but was a joint venture between Chromalloy and Pratt & Whitney. (Werlitz Affidavit, paragraph 8).

5. Admit in part. TACR as a joint venture was structured such that Sieman's dedicated employees controlled the finance related positions of CFO; Human Resource Director (Groff); EHS Coordinator (Broadwell); and the purchasing functions. Most of these responsibilities were Groff's, who also had the final approval for purchasing. (Wilson transcript, pgs. 13, 17-15, 21)

6. Admit. Notwithstanding, laser drilling and laser welding were part of the repair process and supplemented the machines already in use. The same was true for the High Velocity Oxygen Fuel (HVOF) coating machine. Notwithstanding, Plaintiff was qualified to work on the HVOF machine, and did perform such work. Additionally, as per Plaintiff's 2008 Performance Evaluation, he was recommended to be trained to operate the laser machines. (Exhibit "14";) (Alford transcript pgs. 178, 9-179, 2), but was never trained. (Alford transcript pgs. 172, 7-174, 3)

7. Admit.

8. Admit.

9. Admit.

10. Admit. Notwithstanding, Plaintiff was qualified to operate LPPS, APS, EDM, 5-Axis Mill and HVOF. Plaintiff was also able to write and edit programs LPPS, APS and 5-Axis Mill the HVOF machine, and did operate same. Plaintiff further performed sand blasting and pencil gritting as well as being selected for laser drilling and shaping machines though was never trained. (Alford transcript pgs. 115, 12-119, 4)

11. Admit.

12. Admit. Plaintiff was assigned due to the purported "accommodation" related to the purported "failure" of the fit test and the refusal of Defendant to consider other types of respirators other than the minimum required by OSHA. (Broadwell transcript pgs. 32, 13; 36, 6).

13. Deny. Plaintiff was experienced in both repair and OEM. The only difference is that OEM are new parts that need to be coated, while repair involves the re-manufacture of parts which are cleaned and fixed after which they are coated. (Werlitz Affidavit, paragraph 15, 16). Consequently, regardless of the source of the parts, the duties Plaintiff performed related to all. The only process Plaintiff wasn't qualified, laser, Plaintiff had been recommended to be trained. (Alford transcript pgs. 178, 9-179, 2) Regardless, Plaintiff requested other position transfers as well. (Alford transcript pgs. 172, 7-173, 10; 176, 4-177, 3)

14. Plaintiff had been recommended for laser training (Alford transcript 178, 179, 2), which was not provided.

15. Deny. Plaintiff was qualified to work on the HVOF machine and did work on the HVOF machine since 2005. (Alford Dep. transcript 117, 17-118, 10).

16. Admit. Notwithstanding, Plaintiff contends such was pretext and followed Plaintiff's complaints and demands for accommodation. Such occurred through the alternation of specifications in the middle of the "run", requiring previously machined parts to be re-done. This was not uncommon and no one had been previously disciplined. (Werlitz Affidavit, paragraph 15, 16)

17. Deny. The Defendant did not receive "complaints", but received merely allegations. The co-worker complaints were not investigated; Plaintiff was not given any opportunity to dispute; and Plaintiff's complaints against such workers were not produced by Defendant. (Alford Dep. transcript pgs. 138, 2-142, 23) Plaintiff further objects as the statement of facts and documents upon which it relies is hearsay and double hearsay.

18. Deny. The Defendant did not receive "complaints", but received merely allegations. The co-worker complaints were not investigated; Plaintiff was not given any opportunity to dispute; and Plaintiff's complaints against such workers were not produced by Defendant. (Alford Dep. transcript pgs. 138, 2-142, 23). Plaintiff further objects as the statement of facts and documents upon which it relies is hearsay and double hearsay.

19. Deny. The Defendant did not receive "complaints", but received merely allegations. The co-worker complaints were not investigated; Plaintiff was not given any opportunity to dispute; and Plaintiff's complaints against such workers

were not produced by Defendant. (Alford Dep. transcript pgs. 138, 2-142, 23) Plaintiff further objects as the statement of facts and documents upon which it relies is hearsay and double hearsay.

20. Plaintiff can neither admit nor deny. Notwithstanding, Defendant has no corroborating documentation of the review, analysis, or comparisons the claim occurred over an almost two year process, which included the hiring of temporary employees (Wilson transcript pgs.157, 19-174, 19)

21. Plaintiff can neither admit nor deny. Notwithstanding, Defendant has no corroborating documentation of the review, analysis, or comparisons the claim occurred over an almost two year process, which included the hiring of temporary employees (Wilson transcript pgs.157, 19-174, 19)

22. Plaintiff can neither admit nor deny. Notwithstanding, Defendant has no corroborating documentation of the review, analysis or comparisons, the claim occurred over an almost two year process, which included the hiring of temporary employees (Wilson transcript pgs.157, 19-174, 19)

23. Plaintiff can neither admit nor deny. Notwithstanding, Defendant has no corroborating documentation of the review, analysis, or comparisons the claim occurred over an almost two year process, which included the hiring of temporary employees (Wilson transcript pgs.157, 19-174, 19)

24. Plaintiff can neither admit nor deny. Notwithstanding, Defendant has no corroborating documentation of the review, analysis, or comparisons the claim

occurred over an almost two year process, which included the hiring of temporary employees (Wilson transcript pgs.157, 19-174, 19)

25. Plaintiff can neither admit nor deny. Notwithstanding, Defendant has no corroborating documentation of the review, analysis, or comparisons the claim occurred over an almost two year process, which included the hiring of temporary employees (Wilson transcript pgs.157, 19-174, 19)

26. Plaintiff can neither admit nor deny. Notwithstanding, Defendant has no corroborating documentation of the review, analysis, or comparisons the claim occurred over an almost two year process, which included the hiring of temporary employees (Wilson transcript pgs.157, 19-174, 19)

27. Plaintiff can neither admit nor deny. Notwithstanding, Defendant has no corroborating documentation of the review, analysis, or comparisons the claim occurred over an almost two year process, which included the hiring of temporary employees (Wilson transcript pgs.157, 19-174, 19) Notwithstanding, Siemans had denied the purchase of equipment – specifically the laser machines as early as June 2009. (Wilson transcript pgs. 83, 5-86, 22). Thereafter, there were regular board meetings (Wilson transcript pgs. 87, 3-90, 22) and purported discussions with Groff and Finnan. (Wilson transcript pgs. 90, 23-93, 1)

28. Plaintiff can neither admit nor deny. Notwithstanding, Defendant has no corroborating documentation of the review, analysis, or comparisons the claim occurred over an almost two year process, which included the hiring of temporary employees (Wilson transcript pgs.157, 19-174, 19) Notwithstanding, Siemens had

denied the purchase of equipment – specifically the laser machines as early as June 2009. (Wilson transcript pgs. 83, 5-86, 22). Thereafter, there were regular board meetings (Wilson transcript pgs. 87, 3-90, 22) and purported discussions with Groff and Finnan. (Wilson transcript pgs. 90, 23-93, 1)

29. Admit.

30. Plaintiff can neither admit nor deny. Defendant's assertion is based on hearsay and unsupported by any documents.

31. Deny. Cite does not support assertion. Notwithstanding, (Finnan transcript pgs. 34-44, 1), demonstrates the lack of any documentation supporting the business decrease or documents that could be used to compare employee performance.

32. Plaintiff can neither admit nor deny. Notwithstanding, the statement mischaracterizes Plaintiff's expertise. Plaintiff was qualified to operate LPPS, APS, EDM, 5-Axis Mill and HVOF. Plaintiff was also able to write and edit programs LPPS, APS and 5-Axis Mill the HVOF machine, and did operate same. Plaintiff further performed sand blasting and pencil gritting as well as being selected for laser drilling and shaping machines though was never trained. (Alford transcript pgs. 115, 12-119, 4; Ranni Exhibit "14")

33. Admit. Notwithstanding, Plaintiff contends such was pretext and followed Plaintiff's complaints and demands for accommodation. Such occurred through the alternation of specifications in the middle of the "run", requiring previously machined parts to be re-done. This was not uncommon and no one had been previously disciplined. (Werlitz Affidavit)

34. Deny. The Defendant did not receive "complaints", but received merely allegations. The co-worker complaints were not investigated; Plaintiff was not given any opportunity to dispute; and Plaintiff's complaints against such workers were not produced by Defendant. (Alford Dep. transcript pgs. 138, 2-142, 23) Plaintiff further objects as the statement of facts and documents upon which it relies is hearsay and double hearsay.

35. Deny the fourth shift was not "shuttered," but merely ceased being a separate shift while the work performed continued. (Muniz Affidavit)

36. Deny. Hearsay. Defendants have produced no corroborating documentation demonstrating two (2) people were fired, or even identification of who they were.

37. Plaintiff can neither admit nor deny. Notwithstanding, Plaintiff came to work and started work on June 28, 2010 when he was called into a meeting with Dan Finnan and Rich Fernandez. Plaintiff was advised by Dan Finnan that he was being terminated for his workers compensation and missed time, (Alford Dep. transcript pgs. 59, 14-63, 11) and was offered a Severance Agreement. (Exhibit "13") Plaintiff's identification card was taken and he was told to return on July 2nd to meet with Ben Groff. (Id). Both the Termination Checklist (Exhibit "12") and the severance are dated June 25th.

38. Deny. Plaintiff was not out sick from work, but returned to work on June 28th and was told not to return until July 2nd. (Alford Dep. transcript pgs. 59, 14-63, 11)

39. Plaintiff can neither admit nor deny. Notwithstanding, such claim is based upon hearsay and unsupported by any documentation.

40. Plaintiff can neither admit nor deny. Notwithstanding, such claim is based upon hearsay and unsupported by any documentation.

41. Plaintiff can neither admit nor deny. Notwithstanding, such claim is based upon hearsay and unsupported by any documentation.

42. Plaintiff can neither admit nor deny. Notwithstanding, such claim is based upon hearsay and unsupported by any documentation.

43. Plaintiff can neither admit nor deny. Notwithstanding, such claim is based upon hearsay and unsupported by any documentation.

44. Plaintiff can neither admit nor deny. Notwithstanding, such claim is based upon hearsay and unsupported by any documentation.

45. Plaintiff can neither admit nor deny. Notwithstanding, such claim is based upon hearsay and unsupported by any documentation.

46. Plaintiff can neither admit nor deny. Notwithstanding, such claim is based upon hearsay and unsupported by any documentation.

47. Admit. Notwithstanding, Plaintiff's breathing difficulties commenced with Asthma in 2005 and progressed to COPD by 2010. (Alford Dep. transcript pgs. 14,4-15,3). Regardless, Plaintiff had been having discussions with Broadwell regarding his difficulty breathing and repeated requests for a respirator, which were communicated to Groff. (Alford transcript pgs. 34,7-39,18; 41,19-42,14)

48. Admit.

49. Deny. Plaintiff persisted in his requests for a respirator and reasonable accommodation. (Alford transcript pgs. 172, 7-181, 16)

50. Admit.

51. Deny. The Defendant received all Worker Compensation documents, which were processed by Broadwell and Groff. (Broadwell transcript pgs. 7, 6-8, 3; 70, 4-71, 5) Notwithstanding, neither Broadwell nor Groff called Plaintiff's doctor or engaged in a good faith interactive process. (Broadwell transcript pgs. 54, 1-24) In fact, Broadwell never received any instruction or training on ADA or the interactive process. (Id) No employee was ever granted an accommodation to Broadwell's knowledge. (Broadwell transcript pgs. 53, 6-9)

    Though Broadway denied ever receiving safety complaints by others (Broadwell transcript pgs. 55, 10-13), such is directly disputed by Oscar Muniz, who was told by Broadwell he would be fired if he used his own respiratory protection, which was a half-face mask which he brought in after being diagnosed with Asthma and having complained about the lack of adequate respiratory protection. (Muniz Affidavit) Frank Werlitz conveys similar complaints and objections. (Werlitz Affidavit)

52. Admit.

53. Admit. Notwithstanding, neither Broadwell nor Groff compared the Material Data Sheets relative to the protection necessary, nor the particular work being performed. (Broadwell transcript pgs. 24, 16-26, 2; 48, 6-52, 8) TACR did not consider any type of respiratory protection outside of OSHA's minimum standard. (Broadwell transcript pgs. 32,13-39, 18) Notably, she applied this standard to herself, and did

not wear a mask despite traveling through areas where the work required one, but her job didn't. (Broadwell transcript pgs. 45, 2-46, 23)

54. Plaintiff can neither admit nor deny, as documents relating to selection of persons tested was not provided. Broadwell testified the selection would have occurred in a meeting between the testers and Groff. (Broadwell transcript pgs. 60, 13-64, 16)

55. Admit. Notwithstanding, such were not the N95 masks reflected in the MDS (Exhibit "19") or on the product labels. (Alford transcript pgs. 31, 5-33, 22)

56. Admit. Notwithstanding, Defendant did not follow the procedures required under CFR 1910.134e including a medical questionnaire (2) (1910.134 (e) (2) ( i) et seq.) nor did Defendant provide supplemental information to the provider as required (29 CFR 1910.134 (e) (2) (i) et seq.). Lastly, Defendant never considered a positive pressure mask or fit test. (29 CFR 1910.134 (f))

57. Deny. TACR supplied a N100 particle mask, not a respirator. (Id)

58. Deny. Plaintiff was sent for a fit test without the proper information (See Resp. 56) or equipment (Broadwell transcript pgs. 32, 13-33, 19). (See also Plaintiff Expert Report, Exhibit "19").

59. Deny. Defendant's support is hearsay and non-evidentiary. Notwithstanding, such result occurred without proper compliance with regulations or appropriate interactive process. (See 56, 58 supra)

60. Deny. Housekeeping at TACR was poor. (Broadwell transcript pgs. 49, 1-50, 16; Muniz Affidavit;) Werlitz Affidavit) However, Plaintiff was not removed from the

11

area, just re-assigned to an area where the exposure was unchanged. (Alford transcipts pgs. 180, 7-181, 12)

61. Deny. Housekeeping at TACR was poor. (Broadwell transcript pgs. 49, 1-50, 16; Muniz Affidavit; Werlitz Affidavit) However, Plaintiff was not removed from the area, just re-assigned to an area where the exposure was unchanged. (Alford transcipts pgs. 180, 7-181, 12)

62. Admit. Plaintiff sought accommodation.

63. Admit.

64. Admit.

65. Deny. Plaintiff returned to work on June 28, 2010 at which time he was told by Dan Finnan he was fired for reasons related to his medical condition.

66. Admit. Such is true at present, but not when Plaintiff could have and should have, been accommodated.

67. Admit. On August 20, 2012, Plaintiff was granted Social Security Disability granting retroactive benefits to June 19, 2010.

Dated: November 15, 2013

RANNI LAW FIRM
148 North Main Street
Florida, New York 10921
(845) 651-0999

_____
Joseph J. Ranni
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2013, the undersigned served a copy of the above and foregoing via the Court's CM/ECF system upon the following:

Erin Carney D'Angelo
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4586

_____
Joseph J. Ranni
Ranni Law Firm
148 North Main Street
Florida, New York 10921
T: (845) 651-0999
F: (845) 651-5111
joeranni@rannilaw.com